[No. B188665. Second Dist., Div. One. June 22, 2007.]

ERIC SELTEN, Cross-complainant and Appellant, v.
JUNHO HYON, Cross-defendant and Respondent.

**COUNSEL**

Nunziato Buckley Weber, Tom A. Nunziato, Illece Buckley Weber; and Alfred B. Stedman for Cross-complainant and Appellant.

Law Offices of Harold J. Light, Harold J. Light and Bruce A. Gilbert for Cross-defendant and Respondent.

## OPINION

**ROTHSCHILD, J.**—Eric Selten appeals from the summary judgment entered against him on his cross-complaint against Junho Hyon. The trial court granted summary judgment on the ground that all of Selten's claims were based upon a contract that was illegal in part, and that the illegal portions of the contract could not be severed. We agree that the contract was illegal in part and that the illegal portions cannot be severed, but we conclude that Selten should nonetheless be permitted to pursue his common count for the reasonable value of any lawful services rendered. We therefore reverse in part.

## BACKGROUND

This appeal concerns a fee dispute arising out of litigation commenced in 1993 regarding the rights of Hyon and his business associate, Laurence Colangelo, in a sand mining operation on Decker Island in the Sacramento River. The trial court originally dismissed Hyon and Colangelo's suit, but the Court of Appeal reversed the judgment of dismissal in 1996. Unhappy with their trial counsel, Hyon and Colangelo began looking for a replacement.

In 1997, Hyon and Colangelo entered into a contract with National Legal Network (NLN), of which Selten was then president. The express purpose of the contract was for NLN to act as Hyon and Colangelo's "agent, consultant, and case manager with regard to" the then pending Decker Island litigation. The contract authorized NLN to retain counsel for Hyon and Colangelo and to provide other litigation support services, such as facilitating communication among Hyon, Colangelo, and counsel. In 1999, NLN assigned "all rights, title and interest" and "all the remaining and executory obligations" under the contract to Selten.

The contract provided that if "NLN [was] unsuccessful in arranging" for new counsel to represent Hyon and Colangelo in the Decker Island litigation, then "NLN shall not be entitled to compensation under this Agreement." If NLN did succeed in retaining new counsel for Hyon and Colangelo and performed the other services called for by the contract, NLN would receive a contingent fee of 10 percent of any recovery in the Decker Island litigation. In 1999, the parties agreed to increase the contingent fee to 12 percent.

NLN did succeed in retaining Eliot Disner of Erwin Cohen & Jessup to represent Hyon and Colangelo in the litigation. Disner's firm also brought in Jeffrey Kirk as local counsel to assist with the case. A jury returned a $42 million verdict in favor of Hyon and Colangelo, but the trial court granted a defense motion for judgment notwithstanding the verdict, leading to another appeal.

Hyon and Colangelo retained new appellate counsel, Elliot Bien, and again prevailed on appeal. Disner, who had been working on a contingency basis, refused to handle the retrial, so Hyon and Colangelo retained Maxwell Blecher as their new trial counsel. The relationship between Hyon, Colangelo, and Blecher quickly soured, however, and Blecher too withdrew. Hyon and Colangelo next retained Jeffrey Shopoff of Jeffer, Mangels, Butler & Marmaro. Shopoff later left Jeffer Mangels but continued to represent Hyon and Colangelo in the Decker Island litigation.

Shopoff retried the case and won a $7.6 million verdict for Hyon and Colangelo. On October 15, 2003, he negotiated a settlement of the litigation.[1]

Further disputes quickly erupted between Hyon and Colangelo concerning their respective interests in the recovery under the settlement. Philip Putnam of Monteleone & McCrory was retained to assist in resolving those disputes, but with little success. On September 16, 2004, Hyon filed suit against his erstwhile allies. Hyon's second amended complaint named Selten, Colangelo, Putnam, and others as defendants, and it alleged 13 separate claims for relief including breach of contract, breach of fiduciary duty, legal malpractice, and various fraud theories.

Selten cross-complained against Hyon, Colangelo, and others. His first amended cross-complaint alleged claims for breach of partnership agreement, breach of fiduciary duty, and fraud, as well as common counts for the agreed price or, alternatively, the reasonable value of work, labor, and services rendered.

Hyon moved for summary judgment on Selten's first amended cross-complaint. Hyon argued that (1) all of Selten's claims were based on the 1997 contract; (2) the contract called for Selten to engage in the unauthorized practice of law and to provide attorney referral services that are unlawful under Business and Professions Code section 6155 (hereafter section 6155), which requires an individual or entity providing such services to be registered with the State Bar and to meet certain other requirements; (3) pursuant to the 1997 contract, Selten did in fact engage in the unauthorized practice of law and did provide unlawful attorney referral services; and (4) the 1997 contract is therefore illegal and unenforceable.

In opposition to the motion, Selten argued that the contract did not call for, and he did not in fact engage in, the unauthorized practice of law. He

---

[1] Presumably as a result of typographical errors, the declarations in the record state no less than three different dates for the settlement agreement. In their appellate briefs, the parties appear to agree that the litigation settled on October 15, 2003, and that is likewise the most plausible reading of the relevant declarations.

introduced declarations from Attorneys Disner, Kirk, Bien, and Shopoff, among others. Those four attorneys stated that they never witnessed Selten engaging in the unauthorized practice of law and that all legal work was performed by them or under their supervision or control, without Selten's interference. Selten also argued that his business, NLN, did not constitute an attorney referral service within the meaning of section 6155. But Selten did not dispute Hyon's contention that neither Selten nor NLN was registered with the State Bar as an attorney referral service. Finally, in his declaration, Selten stated that from the time he entered into the 1997 contract until the Decker Island litigation settled in 2003, he spent approximately 8,000 hours working for Hyon and Colangelo pursuant to the contract.

The trial court granted Hyon's motion on the ground that the contract called for, and Selten did in fact provide, unlawful attorney referral services. The court further reasoned that the unlawful provisions of the contract could not be severed because the contract provided for a single consideration, namely, the contingent fee, in exchange for all of Selten's services, including attorney referrals. The court therefore concluded that the entire contract was unenforceable. The court further determined that because all of Selten's claims required proof of the unlawful contract and the consideration purportedly due under it, Hyon was entitled to judgment in his favor on Selten's entire first amended cross-complaint. The court did not reach the issue of the unauthorized practice of law.

Selten filed a motion for new trial, challenging the summary judgment ruling. The trial court denied the motion. Hyon's legal claims were tried to a jury, and the remaining equitable issues were briefed and argued to the court. The court entered judgment on November 14, 2005, resolving all causes of action as to all parties. Hyon recovered nothing on his complaint. Selten timely appealed from the judgment, challenging only the ruling on the motion for summary judgment on his first amended cross-complaint.

## STANDARD OF REVIEW

Because Selten's appeal from the judgment challenges the trial court's ruling on Hyon's motion for summary judgment on Selten's first amended cross-complaint, "we independently examine the record in order to determine whether triable issues of fact exist to reinstate the action." (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12 Cal.Rptr.3d 615, 88 P.3d 517].)

## DISCUSSION

### I. The 1997 Contract Is Illegal and Unenforceable

Subdivision (a) of section 6155 provides: "An individual, partnership, corporation, association, or any other entity shall not operate for the direct or indirect purpose, in whole or in part, of referring potential clients to attorneys, and no attorney shall accept a referral of such potential clients, unless [the individual or entity meets all of the requirements of the statute, including registration with the State Bar.]" There is no case law interpreting that provision.

The 1997 contract called for NLN to retain counsel to represent Hyon and Colangelo. The contract provided that NLN would not be entitled to any compensation unless NLN did succeed in recruiting counsel for Hyon and Colangelo. The contract further provided that NLN would be entitled to compensation if NLN did recruit counsel for Hyon and Colangelo and perform the other services called for under the contract. It follows as a matter of law that, under the contract, Hyon and Colangelo were paying NLN, in part, to refer them to an attorney.

Selten does not dispute that NLN recruited counsel for Hyon and Colangelo by introducing them to Disner. Indeed, Selten himself must contend, as part of any claim based on the contract, that he or NLN did recruit counsel for Hyon and Colangelo, because otherwise he would not be entitled to anything under the contract.

Because the contract called for NLN to "operate for the direct or indirect purpose, in whole or in part, of referring potential clients to attorneys," it violated section 6155. Nor do the parties dispute that NLN did so operate, pursuant to the contract.

"The consideration of a contract must be lawful within the meaning of Section 1667." (Civ. Code, § 1607.) "That is not lawful which is . . . [c]ontrary to an express provision of law . . . ." (*Id.*, § 1667.) The contract is therefore illegal, at least in part. And because the contract provided for only a single consideration (the contingent fee) in exchange for all of NLN's services, including attorney referrals, the illegal portions of the contract cannot be severed. (Civ. Code, § 1608.) The trial court thus correctly concluded that the contract is illegal and unenforceable in its entirety.

Selten presents multiple arguments to the contrary, but none has merit. First, he argues that the overall purpose of the 1997 contract was for NLN to provide litigation support services, not merely to refer Hyon and

Colangelo to attorneys, and that attorney referrals were a "[r]elatively [m]inor" part of the contract. In a similar vein, Selten argues that his duties did not end, but rather began, with the referral to counsel, that he was obligated to continue to provide other services throughout the course of the litigation, and that he would be paid nothing if the litigation were not resolved in favor of Hyon and Colangelo. The argument fails because it does not matter that the contract required NLN to provide other services, that those other services were purportedly the main purpose of the agreement, or that NLN's compensation was contingent upon a favorable outcome in the litigation. (*Keene v. Harling* (1964) 61 Cal.2d 318, 319–320 [38 Cal.Rptr. 513, 392 P.2d 273] [if part of the consideration violates a statute, then the contract is partially illegal].) Notwithstanding those provisions, the contract required NLN to refer Hyon and Colangelo to attorneys for a fee, in violation of section 6155. Therefore, the contract was at least partially illegal.

■ Second, Selten argues that under Evidence Code section 951, an "authorized representative" can retain a lawyer on behalf of a client, so NLN's retention of counsel on behalf of Hyon and Colangelo cannot have been unlawful. We disagree. Evidence Code section 951 defines the term "client" solely for purposes of the attorney-client privilege. (*Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1129 [69 Cal.Rptr.2d 317, 947 P.2d 279].) By including "authorized representative" in the definition of "client," the statute extends the privilege to cover not only communications directly between the client and the attorney but also communications between the client's agents and the attorney. (*Ibid.*) Nothing in the statute suggests, however, that an unregistered individual or entity may charge a fee for referring potential clients to attorneys without violating section 6155.

Third, Selten argues that the contract did not actually require NLN to refer Hyon and Colangelo to attorneys, because nothing in the contract prohibited Hyon and Colangelo from finding attorneys on their own. The argument fails because the contract expressly denied NLN any right to compensation "[i]n the event NLN is unsuccessful in arranging [a]ttorney(s) to come into this [l]awsuit in [c]lients' behalf." Thus, by its terms, the contract required NLN to find attorneys for Hyon and Colangelo.

■ Fourth, Selten argues that he did not refer Hyon and Colangelo to Shopoff, the lawyer who ultimately settled the Decker Island litigation. Rather, Disner referred Hyon and Colangelo to Bien, who referred them to Shopoff. Thus, according to Selten, "[t]here was no nexus between any claimed referral and the ultimate successful outcome of [the Decker Island litigation]." The argument fails, because the presence or absence of any such "nexus" is irrelevant. Selten does not dispute that NLN referred Hyon and Colangelo to Disner and arranged for Disner to represent them in the Decker

Island litigation. Had NLN not done so, NLN would not be entitled to any compensation under the 1997 contract. NLN thus referred Hyon and Colangelo to Disner for a fee, in violation of section 6155. It does not matter that Disner withdrew before the litigation concluded,' or that the final settlement of the litigation was negotiated by Shopoff. The statute provides that no individual or entity may "operate for the direct or indirect purpose, in whole or in part, of referring potential clients to attorneys." (§ 6155.) The statute thus prohibits referral to *any* attorney, not just referral to an attorney *who goes on to win the case.*

■ Fifth, Selten argues that the principal evil that motivated enactment of section 6155 was the existence of sham referral services, consisting of attorneys who would refer clients to each other (or sometimes a single attorney who would "refer" all clients to himself or herself), and the record contains no evidence that Selten's business ever fit that model. In support of this argument, Selten relies upon certain materials from the legislative history of section 6155. The argument fails because the cited materials relate only to the 1987 enactment of the original version of section 6155. The Legislature amended the statute in 1992 to include the language we quoted *ante,* to the effect that no individual or entity shall "operate for the direct or indirect purpose, in whole or in part, of referring potential clients to attorneys" without meeting the requirements of the statute. Thus, even if we found the statutory language sufficiently ambiguous to require resort to legislative history—which we do not—the materials cited by Selten would have no effect on our decision, because they relate to a version of the statute that did not include the language on which we rely. (*Regency Outdoor Advertising, Inc. v. City of Los Angeles* (2006) 39 Cal.4th 507, 524 [46 Cal.Rptr.3d 742] [resort to legislative history is unnecessary if statutory language is unambiguous].)

Sixth, Selten argues that he exercised due diligence in investigating whether his business constituted an unlawful attorney referral service, and that he reasonably concluded, on the basis of advice from both the State Bar and privately retained counsel, that his business did not violate section 6155. Selten's good faith and diligence cannot alter the fact that the 1997 contract did require NLN to provide attorney referral services. Moreover, the State Bar and private counsel opinions predate, and do not specifically relate to, the 1997 contract; one of them actually predates the 1992 amendment of section 6155. Selten cites no evidence that anyone ever advised him that the 1997 contract did not require NLN to provide attorney referral services in violation of section 6155.

Seventh, Selten argues that any interpretation of section 6155 that would render the 1997 contract illegal would also render the statute itself unconstitutionally vague, because it would make unlawful "virtually every relationship in a commercial setting where a third party has involvement with another's attorney-client relationship." Selten notes, for example, that "[a] large and disparate variety of professionals such as attorneys, accountants, personal and business managers, brokers and others, regularly help their clients find attorneys (or other professionals), often while they continue providing service to the same client for a fee." The argument fails because NLN (and Selten, by assignment) *earned* its fee, in part, by referring Hyon and Colangelo to Disner. Section 6155 prohibits such conduct by an unregistered individual or entity. Our interpretation of the statute does not render it unconstitutionally vague or make illegal the commonplace *uncompensated* attorney referrals that Selten describes.

Finally, Selten argues that even if the contract is partially illegal because it required NLN to provide unlawful attorney referral services, the illegal portion of the contract should be severed. But Selten never addresses the trial court's reasoning, based on Civil Code section 1608, that severance here is impossible because the contract provides for a single consideration in exchange for all of Selten's services, including attorney referral. Section 1608 provides that "[i]f any part of single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Attorney referrals were among the several considerations that Selten provided for a single object, namely, his contingent fee. By statute, the contract is therefore void in its entirety. We thus agree with the trial court's reasoning. Selten presents no arguments against it, so we conclude that the illegal portions of the contract cannot be severed—the entire contract is void.

The 1997 contract is illegal insofar as it required NLN to provide unlawful attorney referral services in order to earn the contingent fee. The illegal portions of the contract cannot be severed. We therefore agree with the trial court that the contract is illegal and unenforceable in its entirety.

## II. The Illegality of the Contract Does Not Bar Selten's Claim for the Reasonable Value of Lawful Services Rendered

Selten argues that even if the entire contract is illegal and unenforceable, the trial court should have permitted him to pursue his common count for the reasonable value of any lawful services rendered. We agree, and we therefore reverse the judgment as to that claim alone.

When services are rendered under a contract that is unenforceable as against public policy, but the subject services are not themselves prohibited,

quantum meruit may be allowed. (*Huskinson & Brown v. Wolf* (2004) 32 Cal.4th 453, 463 [9 Cal.Rptr.3d 693, 84 P.3d 379]; see also *Lawn v. Camino Heights, Inc.* (1971) 15 Cal.App.3d 973, 980–983 [93 Cal.Rptr. 621]; *Trumbo v. Bank of Berkeley* (1947) 77 Cal.App.2d 704, 708–711 [176 P.2d 376]; Rest.2d Contracts, § 197 [when a contract is "unenforceable on grounds of public policy," restitution may be allowed if the denial of restitution "would cause disproportionate forfeiture"].) The trial court therefore erred when it concluded that the illegality of the 1997 contract barred Selten's claim for the reasonable value of the lawful services he (or NLN) provided. Selten cannot recover for the reasonable value of his unlawful attorney referral services, his unauthorized practice of law (if any), or other unlawful conduct (if any). But he may recover the reasonable value of the lawful work he performed.[2]

Hyon's sole argument to the contrary consists of one conclusory assertion—"Selten is barred from seeking any relief from this Court even on his common counts claim"—supported by quotations from *Bennett v. Hayes* (1975) 53 Cal.App.3d 700 [125 Cal.Rptr. 825], and *Tiedje v. Aluminum Taper Milling Co.* (1956) 46 Cal.2d 450 [296 P.2d 554]. Both cases are inapposite. In *Bennett v. Hayes*, the plaintiff auto mechanic sought to recover for services he had provided in violation of the statutory requirement that he give his customers a written estimate before commencing work. (*Bennett v. Hayes*, *supra*, 53 Cal.App.3d at pp. 701–702.) Thus, the repair work for which the plaintiff sought to recover was itself illegally performed, because he had not provided a written estimate.[3] Here, in contrast, we hold only that the illegality of the 1997 contract does not preclude Selten from recovering the reasonable value of any services *lawfully* rendered.

In *Tiedje v. Aluminum Taper Milling Co.*, the plaintiff sought to void a transaction in which he had sold stock back to the corporation that had issued it, on the ground that the sale was illegal because the corporation had used capital assets and stated capital, rather than earned surplus, to purchase the stock. (*Tiedje v. Aluminum Taper Milling Co.*, *supra*, 46 Cal.2d at pp. 452–453.) Because the plaintiff alleged he was not equally at fault with the corporation, the court allowed him to proceed with his attempts to

---

[2] Selten conceded at oral argument that, because he agreed to work on contingency, his quantum meruit recovery must come out of the recovery, if any, that his former clients ultimately obtain via the Decker Island litigation or its settlement. (Cf. *Fracasse v. Brent* (1972) 6 Cal.3d 784, 791–792 [100 Cal.Rptr. 385, 494 P.2d 9].) Moreover, Selten's quantum meruit recovery cannot exceed the amount he would have been paid under the contingent fee provision of the contract. (See *Cazares v. Saenz* (1989) 208 Cal.App.3d 279, 289 [256 Cal.Rptr. 209]; Rest.2d Contracts, § 377, com. b, p. 225.)

[3] In any event, the discussion in *Bennett v. Hayes*, of the merits of the quantum meruit issue was dictum, because the court concluded that the plaintiff had not preserved the issue for appeal. (*Bennett v. Hayes, supra*, 53 Cal.App.3d at p. 704.)

recover the stock. (*Id.* at pp. 454–455.) The issue of restitution or quantum meruit did not arise, because both parties had fully performed under the contract and because the plaintiff volunteered to return the consideration he had received for the stock. (*Id.* at p. 453.) The case therefore is irrelevant to our holding that Selten should have been permitted to pursue his claim for quantum meruit.

Hyon also cites case law containing broad language to the effect that " ' "[w]henever the evidence discloses the relations of the parties to the transaction to be illegal and against public policy, it becomes the duty of the court to refuse to entertain the action. . . ." ' " (*Russell v. Soldinger* (1976) 59 Cal.App.3d 633, 642 [131 Cal.Rptr. 145], quoting *Agran v. Shapiro* (1954) 127 Cal.App.2d Supp. 807, 826 [273 P.2d 619].) One of the cases Hyon relies upon, *Homami v. Iranzadi* (1989) 211 Cal.App.3d 1104 [260 Cal.Rptr. 6], usefully summarizes that case law: One group of cases involves unlicensed contractors seeking to recover for services they unlawfully provided. (*Id.* at pp. 1109–1110.) Another involves parties seeking to recover money involved in illegal gambling. (*Id.* at p. 1110.) A third involves contractual attempts to circumvent applicable laws (for example, a sham transfer of property to a veteran in order to secure a veteran's priority in obtaining construction materials). (*Id.* at pp. 1110–1111.) In sum, the cases stand for the proposition that " 'a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out; nor can he set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim.' " (*Lee On v. Long* (1951) 37 Cal.2d 499, 502 [234 P.2d 9], quoting 17 C.J.S. § 272, p. 656.) The cases therefore do not undermine our decision, because we are not permitting Selten to have his illegal objects carried out. Rather, we are allowing him to pursue his claim with respect to services he lawfully provided.

Finally, we recognize that Hyon has argued, both in the trial court and on appeal, that the 1997 contract called for NLN (or Selten) to engage in the unauthorized practice of law, and that Selten did in fact engage in it. The trial court did not reach the issue, and neither do we. Hyon is therefore free to pursue it on remand. We note, however, that because we hold the contract illegal and unenforceable in its entirety, and we allow Selten to proceed on his common count for reasonable value alone, Hyon's arguments that the contract called for the unauthorized practice of law are now irrelevant. The issue on remand, should Hyon wish to pursue it, will be whether all, some, or none of the services (other than attorney referral) that Selten actually provided were illegal.

## DISPOSITION

The judgment is reversed in part and affirmed in part. Appellant shall recover his costs on appeal.

Vogel, Acting P. J., and Jackson, J.,[*] concurred.

Appellant's petition for review by the Supreme Court was denied September 12, 2007, S155100.

---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.