Filed 1/20/15  Hyon v. Shopoff CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JUNHO HYON,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>JEFFREY W. SHOPOFF et al.,<br><br>        Defendants and Respondents.<br><br>[And seven other cases.[*]] | A138623<br><br>(Solano County<br>Super. Ct. No. FCS039786) |

These eight consolidated appeals have their origin in a dispute that began in the early 1990's concerning a sand-mining operation on an island in the Sacramento River.[1] The appellant in these appeals, Junho Hyon, ultimately secured a multi-million dollar verdict and agreed to a global settlement of the original dispute, but the division of the settlement proceeds led to further, extensive litigation that had a conclusion unsatisfactory to Hyon.  Years after the dispute concluded, Hyon, acting in propria persona (pro. per.), filed the action giving rise to these appeals against many of the parties

---

[*]Junho Hyon v. Hinshaw & Culbertson LLP et al. (No. A138832); Junho Hyon v. Tom A. Nunziato (No. A138833); Junho Hyon v. Donald G. Savage (No. A138834); Junho Hyon v. Philip C. Putnam (No. A139565); Junho Hyon v. Stein & Lubin et al. (No. A140342); Junho Hyon v. Shopoff Group et al. (No. A142124); Junho Hyon v. Eric Selten (No. A142199).

[1]We previously consolidated six of the appeals filed by Hyon.  On the court's own motion, we now consolidate for purposes of decision the two remaining appeals filed by Hyon that arise out of the same trial court action (Nos. A142124 and A142199).

1

and attorneys involved in the prior litigation. He claimed he had discovered fraudulent conduct that justified revisiting issues decided in prior litigation. These appeals are from judgments of dismissal premised largely on grounds that Hyon's claims are time barred and are precluded as a result of the application of res judicata principles. Because Hyon has offered no cognizable legal argument that would justify reversing the challenged trial court orders, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

When we review an order sustaining a demurrer, we ordinarily take the factual background from the properly pleaded material allegations of the operative complaint. (*Estate of Dito* (2011) 198 Cal.App.4th 791, 795.) However, when one of the grounds for the demurrer is the res judicata effect of prior litigation between the parties, as in this case, we must necessarily consider the actions that are claimed to have preclusive effect. (*Ibid.*) Therefore, we begin by summarizing the prior litigation between the parties.[2]

### *Decker Island Litigation*

Decker Island is located in the Sacramento River in Solano County. In the early 1990's, Hyon and a business partner, Laurence Colangelo, agreed to find individuals interested in investing in a sand-mining operation on Decker Island. Under the agreement with the owner of Decker Island, Hyon and Colangelo were to receive a finder's fee for locating investors. Hyon sought to find investors in Japan. Although the pair found willing investors, the owner of Decker Island failed to pay the finder's fee and began dealing directly with investors located by Hyon and Colangelo.

Hyon and Colangelo commenced what we refer to as the "Decker Island litigation" in 1993 by filing suit in Solano County against the owner of Decker Island. Their case was dismissed at the demurrer stage although they were successful on appeal

---

[2]Our summary is intended simply to give a general overview of the prior litigation. For example, while we refer to various actions and cross-actions, we do not detail all the complaints that were filed or the numerous iterations of those pleadings. A more complete recitation of the lengthy history of this matter can be found in *Hyon v. Selten* (2007) 152 Cal.App.4th 463 (*Selten*) and *Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489 (*Shopoff & Cavallo*).

2

in overturning the trial court's judgment. Dissatisfied with their legal representation, Hyon and Colangelo engaged the National Legal Network to serve as a litigation consultant and provide various services, including locating and managing legal counsel. The president of National Legal Network, Eric Selten, was not an attorney. (See generally *Hyon v. Selten, supra,* 152 Cal.App.4th at p. 465.)

Selten's company was successful in retaining counsel to represent Hyon and Colangelo in the Decker Island litigation. (*Selten, supra,* 152 Cal.App.4th at p. 466.) Following a trial, a jury returned a $42 million verdict in favor of Hyon and Colangelo, but the trial court entered a judgment notwithstanding the verdict. Hyon and Colangelo again prevailed on appeal and a new trial was ordered. (*Ibid.*)

Hyon and Colangelo retained Jeffrey Shopoff to retry the case. (*Selten, supra,* 152 Cal.App.4th at p. 466.) On retrial, Shopoff succeeded in securing a $7.6 million verdict for Hyon and Colangelo in the Decker Island litigation. (*Shopoff & Cavallo, supra,* 167 Cal.App.4th at p. 1498.)

Faced with obstacles to enforcing the $7.6 million judgment, Shopoff negotiated a global settlement agreement that finally resolved the Decker Island litigation. (*Shopoff & Cavallo, supra,* 167 Cal.App.4th at p. 1499.) Under the global settlement agreement, Hyon and Colangelo received assets that included ownership of Decker Island (encumbered by a $2.6 million deed of trust), the common stock of two sand mining companies, mining equipment, and other personal and real property as well as cash (the "settlement proceeds"). (*Ibid.*) Shopoff acted as trustee over the settlement proceeds pursuant to an agreement between Hyon and Colangelo. (*Shopoff & Cavallo, supra,* 167 Cal.App.4th at pp. 1499–1500.)

### *The Interpleader Litigation*

Because the settlement proceeds from the Decker Island litigation consisted primarily of assets other than cash, the proper allocation of the settlement proceeds proved problematic. Selten and various attorneys asserted contingent fee interests in the settlement proceeds from the Decker Island litigation. (*Shopoff & Cavallo, supra,*

3

167 Cal.App.4th at p. 1499.) In addition, Hyon, Colangelo, and Selten disputed their relative ownership interests in the settlement proceeds. (*Id.* at pp. 1500–1501.)

In September 2004, Shopoff, in his capacity of trustee of the settlement proceeds, filed a complaint in interpleader in the Superior Court for the City and County of San Francisco (the "interpleader litigation"). (*Shopoff & Cavallo, supra,* 167 Cal.App.4th at p. 1501.) Shopoff alleged there was an impasse among the claimants to the settlement proceeds. The complaint sought a determination of the shares of the settlement proceeds to which each claimant was entitled, the appointment of a receiver over the settlement proceeds, and an order discharging the receiver from all liability to the claimants. (*Id.* at p. 1501.) Hyon filed a cross-complaint against Shopoff for legal malpractice, conversion, breach of fiduciary duties, misappropriation of assets, and constructive fraud. (*Id.* at p. 1502.)

The trial court appointed a receiver with full powers to manage the settlement proceeds and maximize their value. (*Shopoff & Cavallo, supra,* 167 Cal.App.4th at p. 1504.) Hyon appealed the court's order. In an unpublished opinion, Division One of this court affirmed the order appointing a receiver. (*Shopoff v. Cavallo LLP v. Hyon* (June 15, 2006, A111396) [nonpub. opn.].)[3]

The trial court issued a statement of decision in May 2006 resolving the various claims to the settlement proceeds. (*Shopoff & Cavallo, supra,* 167 Cal.App.4th at p. 1504.) The court subsequently approved the receiver's final report, terminated the receivership, discharged the receiver, distributed the settlement proceeds, and ordered Hyon to pay attorney fees and costs. (*Id.* at pp. 1504–1505.) Hyon appealed. In *Shopoff & Cavallo, supra,* 167 Cal.App.4th 1489, Division One of this court largely affirmed the trial court's orders in the interpleader litigation but reversed and remanded with respect to the amount of compensation owing to Selten. (*Id.* at p. 1526.) Among other things, the appellate court affirmed orders sustaining demurrers to Hyon's cross-complaint. (*Id.* at pp. 1506–1512.)

---

[3]An unpublished opinion may be cited or relied upon if it is relevant under the doctrine of res judicata. (See Cal. Rules of Court, rule 8.1115(b)(1).)

*The L.A. Litigation*

Roughly one week after Shopoff filed the interpleader action in San Francisco, Hyon filed his own lawsuit in Los Angeles County against Selten, Colangelo, and others for fraud and breach of fiduciary duty, among other causes of action (the "L.A. litigation"). (See *Shopoff & Cavallo, supra,* 167 Cal.App.4th at p. 1501.) In the L.A. litigation, Hyon sought to enforce a 2004 agreement with Colangelo, obtain a judicial determination that a three-way agreement with Colangelo and Selten was invalid, and distribute the settlement proceeds from the Decker Island litigation. (*Ibid.*) The L.A. litigation proceeded on a parallel and sometimes overlapping track with the interpleader litigation in San Francisco. (See *Shopoff & Cavallo, supra,* 167 Cal.App.4th at pp. 1501–1505.)

Selten filed a cross-complaint against Hyon and others in the L.A. litigation. (*Selten, supra,* 152 Cal.App.4th at p. 466.) Hyon moved for summary judgment on Selten's cross-complaint on the ground the 1997 contract with Selten's company, National Legal Network, was illegal and unenforceable because the contract called for Selten, who was not an attorney, to engage in the unauthorized practice of law and to provide unlawful attorney referral services. (*Ibid.*) The trial court granted Hyon's summary judgment motion on the ground the contract with Selten called for unlawful attorney referral services. (*Id.* at p. 467.) Hyon's legal claims were tried before a jury, while the remaining equitable claims were submitted to the court. Hyon recovered nothing in a judgment entered in November 2005. Following entry of the judgment, Selten appealed the order granting Hyon's summary judgment motion. (*Ibid.*)

In *Selten, supra,* 152 Cal.App.4th 463, Division One of the Second District Court of Appeal reversed in part the trial court's summary judgment ruling in favor of Hyon. (*Id.* at p. 474.) The appellate court agreed with the trial court that the 1997 contract between Hyon, Colangelo, and National Legal Network was illegal and unenforceable because it constituted an unlawful attorney referral in violation of Business and Professions Code section 6155. (*Selten, supra,* at pp. 468–471.) Nevertheless, the appellate court concluded that Selten should have been permitted to pursue in quantum

5

meruit the reasonable value of any lawful services provided to Hyon. (*Id.* at pp. 471–472.)

On remand, the trial court conducted a bench trial on Selten's quantum meruit claim and entered judgment in favor of Selten for $736,809.13. Hyon appealed in pro. per. In an unpublished opinion filed in April 2011, Division One of the Second District Court of Appeal affirmed the trial court's order. (*Hyon v. Selten* (April 29, 2011, B218942) [nonpub. opn.].)

### *The Original Complaint*

On May 7, 2012, Hyon, acting in pro. per, filed the complaint at issue in this appeal in the Solano County Superior Court. The 60-page complaint names over 50 defendants, including Shopoff, Selten, Colangelo, and virtually everyone else who came into contact with Hyon during the course of the interpleader litigation and the L.A. litigation. The complaint includes causes of action for breach of fiduciary duty, breach of contract, constructive fraud, fraud, conspiracy, negligence, and breach of the covenant of good faith and fair dealing.

The rambling allegations of the complaint revolve around Hyon's dissatisfaction with the outcome of the Decker Island litigation and the lawsuits that followed it. He claims his "life was destroyed" and that he has been left practically penniless. He alleges that Decker Island was sold for $6.6 million in 2007 and that most of the sale proceeds were distributed fraudulently and illegally to various individuals and firms that had an interest in the settlement proceeds from the global settlement. Among other things, Hyon alleges the following—that he was misled into agreeing to the global settlement of the Decker Island litigation, that various parties fabricated allegations in pleadings filed in previous actions, that Shopoff filed a fraudulent notice of a trustee's sale under the supervision of the trial court judge in the interpleader litigation, that the trial court judge in the interpleader action appointed a receiver knowing that the allegations supporting the appointment were false, that Selten's quantum meruit claim in the L.A. litigation was "bogus," and that he "believes" Shopoff embezzled proceeds from the sale of Decker Island. One of the themes underlying the complaint is Hyon's belief that Decker Island

6

was purchased by affiliates of Shopoff and that the mining operation is now being run by "front men" for Shopoff.

The explanation for Hyon's filing of the complaint long after the conclusion of the interpleader litigation rests in his allegation that, in July 2010, he discovered "17 sets of fraudulent documents" filed and recorded in Solano County under the supervision of the trial judge in the interpleader action. Although he does not explain why the 17 sets of documents are fraudulent, Hyon alleges that 7 of the 17 sets of documents "contain bogus notarizations" by the United States Consulate General in Japan.[4] He further alleges he was advised by "2 different lawyers" to sue the defendants named in the complaint within two years of his discovery of the purported fraud.

A number of defendants demurred or filed other dispositive motions in response to the complaint and secured judgments of dismissal. We describe the individual judgments associated with each appeal below.

### *The First Amended Complaint*

After the trial court sustained various defendants' demurrers to the complaint without leave to amend, Hyon filed a first amended complaint on April 22, 2013, alleging causes of action for fraud and conspiracy. Hyon named 17 defendants, including some of the same defendants who had succeeded in obtaining orders sustaining demurrers to the original complaint without leave to amend. The first amended complaint is considerably shorter than the original complaint and omits most of the lengthy history of the dispute. In an apparent acknowledgment that res judicata principles precluded his attempt to relitigate issues decided in the interpleader litigation, Hyon purports to base his first amended complaint solely on his discovery in June 2010 of allegedly wrongful conduct by defendants in recording 17 sets of documents. He alleges he would have prevailed in the interpleader litigation if the trial court had been aware of the purported wrongful

_____

[4]It appears from the record that some of the property interests transferred as a result of the global settlement or during the course of the interpleader litigation were owned by Japanese companies or persons residing in Japan. Hence, the notarizations attached to the legal documents transferring ownership bore the seal of the United States Consulate General in Japan.

7

conduct. Notably, like the original complaint, the first amended complaint contains little or no explanation as to why the 17 sets of documents are fraudulent, other than to mention that some of them contained "bogus notarizations" by the Consulate General of the United States in Japan. Hyon also added an allegation that he had never seen a deed of trust that was recorded in 2005, and he claimed his signature and the notarization on the deed were forged.

Various defendants secured judgments of dismissal following the filing of the first amended complaint. We briefly describe the relevant facts associated with each appeal below.

### A138623—Hyon v. Shopoff

In appeal number A138623, the respondents are defendants Shopoff and the law firm with which he is associated, Shopoff & Cavallo LLP. As explained above, Shopoff represented Hyon in a retrial of the Decker Island litigation, and he pursued the interpleader litigation that resulted in a division of the settlement proceeds from the Decker Island litigation. Although the allegations of the complaint are far from clear, Hyon seems to believe that Shopoff engineered a fraudulent sale of Decker Island at a discounted price to "front men" working for Shopoff, despite the fact the sale was overseen by a court-appointed receiver, whose actions were upheld in the trial court and on appeal.

In an order dated March 27, 2013, the trial court sustained without leave to amend a demurrer filed by Shopoff and Shopoff & Cavallo LLP. The court reasoned that all of Hyon's claims are barred by res judicata. The court stated: "Any claims [Hyon] had, to prevent the court's issuance of a directive to sell [Decker Island], to challenge the manner of sale, to investigate the proposed buyer, or to achieve a higher recovery of proceeds from that sale, could and should have been adjudicated in that interpleader action, the later appeal affirming that court's actions, and the still-later petition for review filed by [Hyon] with the California Supreme Court." The court also reasoned that Hyon's action was barred by applicable statutes of limitation, because the property sale occurred in 2007 and the complaint was not filed until May 2012, without any valid basis offered for

8

tolling the statutes of limitations or for the delayed discovery of the purported fraud, which was not pleaded with specificity in any event.

Hyon filed a notice of appeal from the court's order. A judgment was subsequently entered and served on Hyon. Although the appeal is technically premature and taken from a nonappealable order sustaining a demurrer without leave to amend (see *Estate of Dito, supra,* 198 Cal.App.4th at p. 799), we will treat the appeal as having been taken from the subsequently entered judgment.[5] (Cal. Rules of Court, rule 8.104(d).)

### A138832—Hyon v. Hinshaw & Culbertson LLP

The defendants and respondents in appeal number A138832 are the law firm of Hinshaw & Culbertson LLP and one of the attorneys at that firm, Ronald E. Mallen (collectively, Hinshaw). Hinshaw represented Shopoff in the interpleader litigation. (See *Shopoff & Cavallo, supra,* 167 Cal.App.4th at p. 1496.)

In October 2012, Hinshaw filed a motion to strike Hyon's complaint as a strategic lawsuit against public participation (SLAPP) pursuant to Code of Civil Procedure section 425.16—commonly referred to as the anti-SLAPP statute. The trial court granted the anti-SLAPP motion in an order filed in March 2013. The court concluded the challenged acts arose from protected petitioning activity and that Hyon had failed to establish that his complaint was supported by a prima facie showing of facts to support the relief requested. In concluding that Hyon had failed to meet his burden, the court listed the following reasons: Hinshaw's actions in the prior action were protected by the litigation privilege; Hyon failed to comply with Civil Code section 1714.10, subdivision (a) in securing a prefiling order before pursuing a conspiracy claim against attorneys who had represented an adversary in prior litigation; all the claims are barred by res judicata; and all the claims are barred by applicable statutes of limitation.

Hyon appealed from the order granting the anti-SLAPP motion. The court subsequently entered a judgment dismissing the complaint and awarding Hinshaw

---

[5]The same issue of a technically premature appeal arises in a number of these consolidated appeals. We shall treat the appeals as having been taken from the subsequently entered judgments in each of the affected appeals.

9

attorney fees and costs in an amount to be determined by a separate motion seeking fees and costs.

### A138833—Hyon v. Nunziato

Tom A. Nunziato is the defendant and respondent in appeal number A138833. Nunziato is an attorney who represented Selten, Colangelo, and others in the interpleader litigation and the L.A. litigation. (See *Shopoff & Cavallo, supra,* 167 Cal.App.4th at p. 1496; *Selten, supra,* 152 Cal.App.4th at p. 464.) Nunziato never represented Hyon.

Nunziato demurred to the complaint in October 2012. The court sustained the demurrer without leave to amend in March 2013. In its order sustaining the demurrer, the court reasoned that Hyon's claims against Nunziato were barred by the litigation privilege, that Hyon had failed to comply with the prefiling requirement of Civil Code section 1714.10, subdivision (a), and that his claims were barred under principles of res judicata.

Hyon appealed from the order sustaining the demurrer without leave to amend. It does not appear from the record before this court that a judgment of dismissal was ever entered. Where, as here, it is apparent "the court intended to entirely dispose of the action, we are empowered to amend the order to make it an appealable judgment of dismissal." (*Estate of Dito, supra,* 198 Cal.App.4th at pp. 799–800.) Accordingly, we deem the challenged order to be an appealable judgment (*Id*. at p. 800.)

### A138834—Hyon v. Savage

Donald G. Savage, the defendant and respondent in appeal number A138834, was court-appointed receiver in the interpleader litigation who oversaw the disposition of the settlement proceeds from the Decker Island litigation.

Savage demurred to the complaint in January 2013. In support of his demurrer, Savage argued that Hyon's claims are barred by res judicata, that Hyon failed to obtain leave of court pursuant to Code of Civil Procedure section 568 before suing a court-appointed receiver, that Hyon cannot pursue claims individually against the receiver, and that all of Hyon's claims are time barred.

10

After the court sustained the demurrer without leave to amend and entered a judgment of dismissal in favor of Savage, Hyon filed a timely appeal.

*A139565—Hyon v. Putnam*

In appeal number A139565, the defendants and respondents are Philip C. Putnam, the law firm of Monteleone & McRory LLP (Monteleone), and Elizabeth Hagianakes-Hill.  Putnam is an attorney and partner at Monteleone, which provided legal services to Hyon beginning in 2003.  Hagianakes-Hill was Putnam's secretary and appears to have notarized at least one of the documents Hyon claims are fraudulent.  Hyon sued Monteleone and Putnam in the L.A. litigation for fraud and legal malpractice, among other causes of action.  Putnam and Monteleone settled the lawsuit with Hyon in 2005.

Monteleone, Putnam, and Hagianakes-Hill each filed demurrers to the first amended complaint in May 2013.  In an order filed in August 2013, the trial court sustained the demurrers without leave to amend.  The court cited the fact that Hyon had released his claims against Putnam and Monteleone in connection with a settlement in the L.A. Litigation.  The court also noted that all the claims are barred by applicable statutes of limitation as well as principles of res judicata.  With regard to the fraud claim, the court concluded the three-year statute of limitations had run and that Hyon had not explained why he was unable to discover the purported fraud earlier than 2010 given that the allegedly fraudulent documents were an integral part of the record in the interpleader litigation.

Hyon filed a timely appeal on the same date a judgment of dismissal was entered.

*A140342—Hyon v. Stein & Lubin LLP*

The defendants and respondents in appeal number A140342 are the law firm of Stein & Lubin LLP and two attorneys employed by that firm, Theodore Griffinger and Michael Donner (collectively, Stein & Lubin).  Stein & Lubin represented the court-appointed receiver, Donald Savage, in the interpleader litigation.

Stein & Lubin filed a demurrer to the first amended complaint in August 2013, arguing that Hyon's claims are time barred and are barred by res judicata.  Stein & Lubin also contended the claims are barred by the litigation privilege, that Hyon failed to obtain

11

leave of court to sue the receiver's counsel pursuant to Code of Civil Procedure section 568, and that Hyon failed to obtain leave of court to sue Stein & Lubin under Civil Code section 1714.10.

The trial court sustained the demurrer without leave to amend in November 2013. Hyon appealed from the order sustaining the demurrer, and a judgment of dismissal was entered shortly thereafter.

### *A142124—Hyon v. Shopoff Group*

In appeal number A142124, the defendants and respondents are the Shopoff Group, Laurence Colangelo, Alfred Stedman, and Ronald Johnson. As discussed above, Colangelo was Hyon's original business partner in the business venture that led to the Decker Island litigation. Stedman and Johnson are lawyers who represented parties in the prior litigation. Shopoff Group is a real estate investment firm in which Shopoff had served as a director. Hyon expressed the belief that Shopoff Group was somehow behind the operation of the sand-mining operation on Decker Island after it was sold by the receiver in the interpleader litigation.

At Hyon's request, the trial court clerk entered defaults in April 2013 against Shopoff Group, Colangelo, Stedman, and Johnson on the original complaint. At the time, Hyon did not seek default judgments and did not give notice of the amount of any damages sought. At around the same time Hyon sought entry of the defaults, he filed his first amended complaint in April 2013, reducing the number of defendants to 17 from over 50 in the original complaint. Among the defendants named in the original complaint who were omitted from the first amended complaint were Shopoff Group, Colangelo, Stedman, and Johnson.

Nearly a year after filing his first amended complaint, Hyon sought to obtain default judgments against Shopoff Group, Colangelo, Stedman, and Johnson in a prove-up hearing. Following a hearing, the court ruled against Hyon in an order filed May 20, 2014. The court first noted it had no jurisdiction over the defaulted defendants because the filing of a first amended complaint that failed to name any of the defaulted defendants amounted to a dismissal without prejudice of those defendants. The court also stated that,

12

even if it could consider the allegations in the original complaint, Hyon had failed to assert any viable claim and did not serve any documents on any of the defaulted defendants identifying the amounts of damages he was seeking. The court ordered the action dismissed without prejudice as to Shopoff Group, Colangelo, Stedman, and Johnson. Hyon appealed from the dismissal order.

### A142199—Hyon v. Selten

In appeal number A142199, the defendant and respondent is Eric Selten. As explained above, Selten provided litigation support services to Hyon in the Decker Island litigation and was a party to the interpleader litigation and the L.A. litigation. In an order dated June 2, 2014, the trial court granted Selten's demurrer without leave to the first amended complaint. The trial court reasoned that Hyon's claims are barred by res judicata and applicable statutes of limitation. The court also concluded that Hyon failed to allege facts sufficient to show why the purported fraud could not have been discovered earlier with reasonably diligent efforts. Following entry of a judgment of dismissal in favor of Selten, Hyon timely appealed.

### DISCUSSION

At the outset, we observe that Hyon's status as a pro. per. litigant does not exempt him from the rules of appellate procedure or relieve his burden on appeal. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.) We treat pro. per. litigants like any other party, affording them " 'the same, but no greater consideration than other litigants and attorneys.' " (*Ibid.*) The judgment is presumed correct on appeal and it is the burden of the party attacking it, whether represented by counsel or proceeding in pro. per., to "affirmatively demonstrate prejudicial error." (*People v. Garza* (2005) 35 Cal.4th 866, 881.) As an appellate court, we are not required to consider alleged error when the appellant merely complains of error without offering pertinent or intelligible argument to support the appellant's position. (See *Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119–1120; *Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384 [court disregards argument for which no authority is furnished].)

13

The problem with all eight of Hyon's appeals is that he presents no cognizable legal argument why we should reverse the challenged trial court orders. In the consolidated opening brief filed by Hyon in six of the appeals, his "argument" consists of (1) a complaint that it is "extremely deplorable" the trial court judge is "free from any prosecution" and (2) a statement that governmental agencies, such as the district attorney and the State Bar, have done nothing to protect him. He urges this court to "save" him from this situation. In the argument section of one of his briefs in appeal number A142124—which arises from Hyon's attempt to have default judgments entered against various parties—Hyon simply asserts his belief that Shopoff Group was involved in purchasing Decker Island and that $7.6 million in damages is just. He makes similarly vacuous claims against the other defendants who had defaults entered against them. In appeal number A142199 involving respondent Selten, Hyon's sole argument is that the court reporter erred in transcribing certain words he spoke at the hearing on Selten's demurrer. He does not explain how he was prejudiced by the purported error in transcription.[6]

Taken together, Hyon's arguments offer no basis for this court to disturb the trial court's rulings. Among other things, Hyon has not explained how he can avoid the res judicata effect of prior litigation involving many of the very same issues he seeks to raise in this action. Res judicata "prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.) Under the doctrine of res judicata, "all claims based on the same cause of action must be decided in a single suit; if not brought

---

[6]Hyon attached documents to all of his briefs and purported to request judicial notice of the documents. We disregard the attached documents and deny the requests for judicial notice. Although a party may attach copies of material in the appellate record to a brief (Cal. Rules of Court, rule 8.204(d)), it is not clear whether the documents attached to Hyon's briefs are part of the appellate record. Further, to the extent Hyon seeks to present factual material to this court that was not before the trial court, the requests are improper. (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)

initially, they may not be raised at a later date." (*Ibid.*) Here, Hyon effectively seeks to relitigate the same issues decided in prior litigation.

Further, Hyon cannot get around the preclusive effect of prior litigation by making vague and unsupported allegations that the parties to the earlier litigation somehow defrauded him as well as the court. Giving Hyon's various complaints a generous reading, his claim seems to be that Shopoff engineered a fraudulent transaction in which the receiver in the interpleader litigation recommended a sale of Decker Island at a bargain price to "front men" for Shopoff who could then exploit the resources of Decker Island. In addition to the fact that these fraud allegations are not pleaded with specificity, Hyon has failed to plead facts sufficient to demonstrate that he was unable to make the discovery of the alleged fraud earlier despite reasonable diligence. (See *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 808.) As a consequence, Hyon's fraud claims (like all of the other claims in the original complaint) are untimely. (See Code Civ. Proc., § 338, subd. (d) [three-year statute of limitations for fraud].) In light of the fact that Hyon has not demonstrated how he could cure the defects by amendment, the trial court did not abuse its discretion in sustaining the demurrers without leave to amend. (See *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) Because these grounds are sufficient to confirm that Hyon's complaint and first amended complaint fail to state a cause of action as a matter of law, it is unnecessary to consider any of the other arguments supporting the various demurrers and the order granting the anti-SLAPP motion.

We simply add that, in connection with appeal number A142124, the trial court correctly ruled that Hyon's filing of a first amended complaint omitting Shopoff Group, Colangelo, Stedman, and Johnson amounted to a dismissal without prejudice as to those defaulted defendants. (See *Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, 1142.) Consequently, the court did not err in denying Hyon's request to enter judgment against those defendants or in dismissing them from the action without prejudice.

15

The respondents in appeal number A138623, Shopoff and Shopoff & Cavallo LLP, urge that we impose sanctions against Hyon for pursuing a frivolous appeal. (Code Civ. Proc., § 907; Cal. Rules of Court, rule 8.276.) We are not persuaded that it would be appropriate to impose sanctions under the circumstances presented here. As the parties moving for sanctions admitted in an earlier pleading, "[s]anctions are not an answer, because Mr. Hyon has limited resources." As a result of the disposition of this appeal, Hyon will bear responsibility for the prevailing parties' costs, and he will be liable to pay attorney fees and costs incurred by parties that prevailed on an anti-SLAPP motion. In light of Hyon's limited financial resources—which no one seems to dispute—adding monetary sanctions to the amounts Hyon will already be required to pay would serve little purpose. Further, although the appeals are objectively meritless, we cannot say with confidence that Hyon pursued the appeals in bad faith or solely for the purpose of harassing Shopoff and others. (See *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649 [discussing objective and subjective standards for assessing whether appeal is frivolous].) Based upon the record before this court, Hyon appears to have a fervent but misguided belief in the righteousness of his cause.

As an alternative to imposing sanctions, Shopoff and Shopoff & Cavallo LLP separately requested that this court declare Hyon to be a vexatious litigant and issue a prefiling order requiring him to obtain permission before filing any further litigation in pro. per.[7] (See Code Civ. Proc., § 391.7.) It is tempting to entertain the motion given Hyon's recent history of pursuing meritless actions in pro. per. against numerous parties. Although we possess the power in the first instance to declare a party a vexatious litigant and issue a prefiling order (see *In re R.H.* (2009) 170 Cal.App.4th 678, 691–692), we decline to do so here for reasons we explain.

The moving parties sought relief first in the trial court, which denied the vexatious litigant motion on the ground it had "no present authority" to act because the moving parties had already secured judgments of dismissal that were on appeal. Insofar as the

_____

[7]We grant the request for judicial notice that accompanied the vexatious litigant motion solely for purposes of considering that motion.

16

trial court believed the pendency of an appeal deprived it of power to act on a vexatious litigant motion by one of the parties to the appeal, it was mistaken. Although the filing of an appeal generally divests the trial court of jurisdiction, an appeal does not prevent the trial court from considering ancillary or collateral matters that do not affect the judgment on appeal. (See *Young v. Tri-City Healthcare Dist.* (2012) 210 Cal.App.4th 35, 50.) Because a vexatious litigant determination is collateral to the judgment, the trial court was not precluded from considering the motion. (Cf. *Day v. Collingwood* (2006) 144 Cal.App.4th 1116, 1123–1126.)

A review of the vexatious litigant listing maintained by the State of California reveals that very few of the determinations were made by Courts of Appeal.[8] That should not come as a surprise. Because a vexatious litigant determination requires factual findings and an exercise of discretion, the issue is typically and most appropriately addressed in the trial court. There may be circumstances in which it is appropriate for the Court of Appeal to consider the issue in the first instance, such as when the actions supporting a vexatious litigant determination take place in the appellate court or when considerations of judicial efficiency dictate that no purpose would be served by delaying consideration of a meritorious motion. (See *In re R.H., supra,* 170 Cal.App.4th at pp. 691–692*; In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 1005–1006.) Here, the vexatious litigant motion was primarily based upon the outcome of past litigation and actions taken by Hyon in the trial court. The objectionable conduct largely did not take place in this court. Consequently, it is not the case that this court is uniquely positioned to consider the conduct supporting the vexatious litigant motion. Further, although it would certainly be more expeditious for the appellate court to entertain vexatious litigant motions in the first instance, we question whether it is appropriate to do

---

[8]See http://www.courts.ca.gov/documents/vexlit.pdf.

17

so when the trial court has declined to consider the matter.  Therefore, we deny the vexatious litigant motion without prejudice to the right to pursue relief in the trial court.[9]

## DISPOSITION

The judgments are affirmed.  The motion for sanctions in appeal number A138623 is denied.  The motion to declare Hyon a vexatious litigant in appeal number A138623 is denied without prejudice to the right to pursue the motion in the trial court.  Respondents shall be entitled to recover their costs on appeal.


_____
McGuiness, P.J.


We concur:


_____
Pollak, J.


_____
Jenkins, J.

---

[9]We also note that a moving party must establish that the person sought to be declared a vexatious litigant under subdivision (b)(1) of section 391 of the Code of Civil Procedure must have had at least five litigations "finally determined adversely" to the person.  The moving party must establish the *finality* of any adverse determination—i.e., that there was no further appeal of the matter.  It is not enough simply to rely on an adverse but nonappealable order (such as an order sustaining a demurrer without leave to amend) without some evidence establishing that the litigation concluded without further action or an appeal.